*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re TAYLOR/TAYLOR-WALTERS/
WALTERS/WILLIAMS, Minors.

UNPUBLISHED
January 28, 2020

No. 349149
Wayne Circuit Court
Family Division
LC No. 16-523774-NA

Before: BECKERING, P.J., and CAVANAGH and STEPHENS, JJ.

PER CURIAM.

Respondent appeals as of right an order terminating respondent's parental rights to the minor children CCT, DLT, JLW, KSW, SJW, and LAW, under MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions that led to adjudication), and MCL 712A.19b(3)(j) (reasonable likelihood that child will be harmed if returned to parent). On appeal, respondent argues that the trial court clearly erred in terminating her parental rights because petitioner, the Department of Health and Human Services (DHHS), failed to engage in reasonable efforts toward reunification. Respondent also argues that the trial court clearly erred in finding that termination was in the children's best interests. We affirm.

## I. STATEMENT OF FACTS

This case arises out of an allegation involving improper supervision of the children after respondent was arrested for unarmed robbery. The DHHS filed a petition with the trial court, requesting the trial court take jurisdiction over CCT, DLT, JLW, KSW, SJW, and LAW, and make the children temporary court wards. The trial court authorized the petition.

As part of respondent's parent agency agreement, respondent was to obtain suitable housing, acquire a source of legal income, pursue psychiatric treatment, complete drug screenings, and follow the terms of her probation. Respondent was unsuccessful at obtaining housing and employment, and failed to attend most of her required drug screenings. Despite respondent's initial attendance for a psychiatric evaluation, respondent ultimately refused to engage in further psychiatric or substance abuse treatment as required under her service plan. Furthermore, during the pendency of the termination proceeding, SJW left her placement with her maternal grandmother and was missing. It was suspected that respondent had knowledge of

SJW's location, yet despite several attempts to have SJW returned to the DHHS, respondent refused to return SJW or divulge her location.

The DHHS filed a supplemental petition for permanent custody of the children, alleging that respondent had substantially not complied with the terms of her service plan. Respondent made admissions to statutory jurisdiction, and the trial court found clear and convincing evidence to establish statutory grounds to terminate respondent's parental rights. After a best-interests hearing, the trial court found that it was in the best interests of the children to terminate respondent's parental rights to all the children, because respondent lacked a commitment to rectify the conditions that brought the children into the care of the DHHS. The trial court issued an order terminating respondent's parental rights to all the children.

## II. DISCUSSION

The DHHS engaged in reasonable reunification efforts before the trial court terminated respondent's parental rights. And the trial court correctly found, by a preponderance of the evidence, that termination was in the best interests of the children.

## A. REASONABLE EFFORTS

Respondent argues that the trial court plainly erred when it terminated respondent's parental rights to the children because the DHHS did not engage in reasonable efforts toward reunification. Specifically, respondent argues that the DHHS failed to provide adequate and consistent mental health treatment services throughout the termination proceedings, did not provide sufficient assistance with regard to respondent's initial barriers to reunification of housing and employment, and failed to inquire as to respondent's progress with her parent partner. According to respondent, the DHHS's offered services were unreasonable and, thus, termination of respondent's parental rights to the children was plain error. We disagree.

We note that respondent stipulated to the allegations in the DHHS's permanent custody petition, allowing the trial court to find statutory grounds for termination. The adequacy of the DHHS's efforts toward reunification is relevant to the sufficiency of the evidence to establish statutory grounds. *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005). By stipulating to these allegations, respondent waived any challenge to the finding of statutory grounds for termination, and consequently waived her claim that she was denied adequate reunification services. "A party cannot stipulate to a matter and then argue on appeal that the resultant action was error." *Chapdelaine v Sochocki*, 247 Mich App 167, 177; 635 NW2d 339 (2001). Notwithstanding, we will address the merits of respondent's argument concerning whether the DHHS engaged in reasonable efforts toward reunification with respondent.

This Court reviews a trial court's factual findings for clear error. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). Because respondent's issue regarding the adequacy of the service plan is unpreserved, the issue is reviewed for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich

750, 763; 597 NW2d 130 (1999). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich at 9.

The DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). Part of this requirement to make reasonable efforts is the creation of a service plan, which outlines the steps that the DHHS and respondent "will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 85-86, citing MCL 712A.18f(3)(d) (stating that the service plan shall include a "[s]chedule of services to be provided to the parent . . . to facilitate the child's return to his or her home"). "Trial courts are in the best position, in the first instance, to determine whether the steps taken by the [DHHS] in individual cases are reasonable." *Id*. at 88 n 6. A respondent is obliged to engage in and benefit from the service plan to avoid termination of parental rights: "While the [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012); see also *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014) ("Not only must respondent cooperate and participate in the services, she must benefit from them.") When challenging the services offered by the DHHS, a respondent must establish that she would have fared better if other services had been offered. *In re Fried*, 266 Mich App at 542-543.

The DHHS also has obligations under the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*., to provide reasonable modifications to the services or programs offered to a respondent with a disability. *In re Hicks/Brown*, 500 Mich at 86. Although respondent has not raised an explicit challenge under the ADA, such challenge is implied, because the issue presented, in part, is whether the DHHS provided services that accommodated respondent's mental health needs. The ADA defines a "disability" as "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual." 28 CFR 35.108(a)(1)(*i*). "[E]fforts at reunification cannot be reasonable under the Probate Code if the [DHHS] has failed to modify its standard procedures in ways that are reasonably necessary to accommodate a disability under the ADA." *In re Hicks/Brown*, 500 Mich at 86. "Once the [DHHS] knew of the disability, its affirmative duty to make reasonable efforts at reunification meant that it could not be 'passive in [its] approach . . . as far as the provision of accommodations is concerned.' " *Id*. at 87-88, quoting *Pierce v Dist of Columbia*, 128 F Supp 3d 250, 269 (D DC, 2015). "[A] parent, whether disabled or not, must demonstrate that she can meet [her children's] basic needs before they will be returned to her care." *In re Terry*, 240 Mich App 14, 28; 610 NW2d 563 (2000).

Respondent first asserts that the DHHS did not make reasonable efforts toward reunification because it failed to provide appropriate mental health treatment services throughout the proceedings. As a preliminary matter, the DHHS "cannot accommodate a disability of which it is unaware." *In re Hicks/Brown*, 500 Mich at 87. Child protection proceedings began after respondent was incarcerated, and she was released from jail in November of 2016. The DHHS referred respondent to a psychological evaluation and to individual counseling in January of 2017. Respondent had attended one therapy session after the initial referral as of April 5, 2017, and the DHHS foster care worker requested that respondent have more time to attend further therapy sessions. Respondent also allegedly underwent a psychological evaluation in January of

2017, but did not provide the DHHS with a copy of that evaluation. Respondent was then incarcerated starting in June of 2017, and thus the trial court was not able to hold an additional dispositional review hearing until August of 2017, at which point another referral was made for a psychiatric evaluation. The DHHS also restarted respondent's initial therapy sessions in December of 2017, after her services were terminated. Thus, though the child protection proceedings began in October of 2016, the DHHS was not apprised of respondent's diagnoses of schizophrenia, post-traumatic stress disorder, panic disorder, and cannabis abuse until January 24, 2018, when it received the November 2017 psychiatric report from Detroit Central City Clinic. The DHHS engaged in extended efforts to evaluate respondent's psychiatric status throughout the initial portion of the proceedings before respondent's diagnoses were known, and the DHHS's obligation to accommodate respondent's mental disabilities did not begin until the results of the psychiatric evaluation were released.

Furthermore, the record does not support respondent's claim that she was not offered follow-up psychiatric, psychological, and substance abuse treatment throughout the proceedings. After the DHHS received the November 2017 psychiatric report, a foster care worker communicated with respondent's individual therapist regarding how to incorporate the report's recommendations into respondent's treatment and service plan. Respondent was referred to a psychiatrist, who prescribed psychotropic medications for symptom stabilization. When respondent expressed disagreement with the November 2017 psychiatric report's diagnoses and the medication regimen, a foster care worker communicated to respondent that respondent had the option to engage with the Clinic to confirm whether these diagnoses were accurate, and subsequently provide the DHHS with a letter explaining the corrected diagnoses, if any, and a psychiatrist's report of respondent's mental health stability. The DHHS requested receipt of monthly medication review information from respondent's psychiatrist to help evaluate respondent's ongoing mental health. After the DHHS learned of respondent's diagnoses in January of 2018, but before the DHHS filed the supplemental petition seeking permanent custody in October of 2018, respondent had been referred: (1) once to family therapy, which she did not attend; (2) four times to substance abuse counseling, which she did not complete; and (3) twice for psychiatric treatment, which she did not complete. Even after the supplemental petition was filed, the DHHS continued to offer services, but respondent chose not to participate. Respondent was thus provided with multiple opportunities to comply with services tailored to meet her mental health needs before the DHHS sought termination of respondent's parental rights.

It is clear that respondent largely declined the mental health services that were offered and did not request the provision of additional, or different services from the DHHS. Respondent refused psychiatric care after the dispositional hearing in May of 2018, and despite regular contact with a DHHS foster care worker, she neglected to request any additional services. Respondent also refused to take her prescribed psychotropic medications because she alleged that she did not need them. Though respondent alleged that she was taking Seroquel, a drug not prescribed by the psychiatrist to whom she had been referred by the DHHS, respondent refused to reveal who prescribed it. In the first termination hearing, respondent testified that at the time of the filing of the petition she had missed 30 out of 36 drug screens during the year of 2018 and had not engaged in mental health services. Respondent failed to attend the Clinic for Child Study evaluation after calling the Clinic the day scheduled for the appointment to state that she would not attend because it was "too early" in the morning, and provided a telephone number to

the Clinic that was inoperable. It was not until December 18, 2018 that respondent finally completed mental health counseling.

Additionally, respondent does not identify any further services that would have benefited her to the extent that reunification would have been a possibility. See *In re Hicks/Brown*, 500 Mich at 86. Respondent argues that the DHHS failed to offer her a "structured mental health program," but neglects to identify what type of program or pinpoint a specific service provider that would have allegedly sufficed. Even if the DHHS could have done more to arrange additional mental health treatment, respondent cannot show how it would have benefited her, especially because she did not fully participate and engage in the mental health services that DHHS did provide. See *In re Fried*, 266 Mich App at 542-543. Nor has respondent cited any authority allowing a trial court in these circumstances to order the DHHS to force persons to engage in mental health care services and to take medication that would enable them to benefit from services in a child protective proceeding. The record demonstrates that the DHHS provided several specialized services to respondent on the basis of her psychological evaluation, but she failed to participate in these services and ultimately did not benefit from these services. This failure is dispositive. See *In re Frey*, 297 Mich App at 248.

Respondent also argues that the DHHS failed to provide adequate assistance in her search for suitable housing and employment after her psychiatric evaluation was presented to the trial court in February of 2018. However, respondent's argument does not address how respondent's own actions hindered the DHHS's efforts. Respondent obtained housing and employment, and had her home assessed as suitable by the DHHS, as of February of 2018. By April of 2018, respondent had moved and subsequently refused to consent to a foster care worker's attempt to conduct a home assessment, and refused to sign a release allowing a foster care worker to talk with her employer or to provide income documentation. Respondent did not request any additional help to find housing or employment. The DHHS cannot provide a service that it is unaware is needed, and respondent never informed it of her housing or employment needs.

Furthermore, while the record does not indicate whether respondent received a parent partner, the lack of a parent partner would not by itself make the DHHS's reunification efforts insufficient. Respondent has not demonstrated how it would have benefited her, especially because she did not fully participate or engage in the services that DHHS did provide. See *In re Fried*, 266 Mich App at 542-543. Additionally, the record demonstrated that respondent's psychological evaluation recommended that respondent engage in one-on-one parenting, such as supportive visitation, after her mental health had stabilized. Respondent needed to first address her mental health needs, yet did not express interest in doing so.

The DHHS made reasonable efforts to accommodate respondent's specific needs by recommending that she complete the appropriate psychological and psychiatric evaluations, and then by referring (and later re-referring) her for the services recommended in the evaluation. See *In re Hicks/Brown*, 500 Mich at 85. Respondent did not fully participate in the mental health services offered, and did not benefit from them. Furthermore, respondent refused to provide the DHHS with any means of assessing housing or employment after February of 2018, and chose not to request any housing or employment services from DHHS. Therefore, the trial court did not err by finding that the DHHS made reasonable efforts toward reunification.

Respondent additionally argues in her brief on appeal that the DHHS failed to exercise reasonable efforts by failing to assist some of the children's fathers with obtaining custody orders. Respondent's argument correctly notes the requirement under MCL 712A.19a(2) that the DHHS exert reasonable efforts does not solely extend to a custodial parent, but also to a noncustodial parent. "Reunification efforts may be initially directed at a custodial parent when appropriate, consistent with the statutory preferences for a child's 'own home.' But if these efforts are unfruitful, the state must also make reasonable efforts to reunify the child with the noncustodial parent." *In re Rood*, 483 Mich 73, 121; 763 NW2d 587 (2009). However, this requirement stems not out of the statutory rights of the custodial parent, but rather the due-process rights of the noncustodial parent. See *id.* ("There is no reason to conclude that a parent has a diminished constitutional right to his child merely because he does not have physical custody of that child.") Furthermore, the DHHS did attempt to assist the fathers with the custody process. The fact that the trial court independently sought for the nonrespondent fathers to begin custody proceedings in no way compels the conclusion that the DHHS's efforts toward reunification with respondent were not reasonable, and does not suggest that respondent would have fared better individually if the nonrespondent fathers had been offered additional services to help them obtain custody. Indeed, there was no guarantee that respondent's parental rights would not be terminated even if the children's fathers obtained custody of the children. "[P]arental rights of one parent may be terminated without termination of the parental rights of the other parent and it is not necessary that the child be in foster care in order for the termination petition to be entertained." *In re Marin*, 198 Mich App 560, 568; 499 NW2d 400 (1993).

Respondent's argument may be confusing the reluctance to terminate when a minor child is in a relative placement. Placement with a relative does not preclude the trial court from terminating a respondent's parental rights to a minor child: "the trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests." *In re Olive/Metts*, 297 Mich App 35, 43; 823 NW2d 144 (2012). However, a child's placement with relatives weighs against termination, and therefore, "under MCL 712A.19a(6)(a), the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in a child's best interests." *Id.* (quotation marks and citations omitted). Respondent's argument is nevertheless without merit. MCL 712A.13a(1)(j) defines "relative," and biological father is not included in the definition. See MCL 712A.13a(1)(j); *In re Schadler*, 315 Mich App 406, 413; 890 NW2d 676 (2016). Thus, the children's father's potential success for reunification with the children does not obviate the propriety of the termination of respondent's parental rights or weigh against the trial court's best-interests determination.

## B. BEST INTERESTS

Respondent argues that the trial court clearly erred by finding that termination of respondent's parental rights was in the children's best interests. We disagree.

After a trial court finds that a statutory basis for termination exists by clear and convincing evidence and that a preponderance of the evidence shows that "termination of parental rights is in the best interests of a child, the court must terminate the respondent's parental rights to that child." *In re Schadler*, 315 Mich App at 408. "The trial court's decision on the best interests question is reviewed for clear error." *In re BZ*, 264 Mich App 286, 301; 690

NW2d 505 (2004). A trial court's decision "is clearly erroneous if, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake had been made." *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003).

"With respect to the trial court's best-interest determination, we place our focus on the child rather than the parent." *In re Schadler*, 315 Mich App at 411. "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The trial court must consider the best interests of each child individually. *In re Olive/Metts*, 297 Mich App at 42. However, the trial court does not err "if it fails to explicitly make individual and—in many cases—redundant factual findings concerning each child's best interests." *In re White*, 303 Mich App at 716. The trial court "may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the child's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

The trial court did not clearly err in finding that termination of respondent's parental rights was in the children's best interests. Respondent argues that the trial court clearly erred because it failed to consider whether respondent was bonded with the children. However, respondent fails to acknowledge that she had missed 27 out of the 38 visits scheduled before the supplemental petition was filed, and engaged in only three visits after the supplemental petition was filed. Any bond with CCT, DLT, LAW, JLW, and KSW was weakened because of respondent's failure to visit.

Even if respondent and her children shared a bond, "that bond was outweighed by the children's need for safety, permanency, and stability." *In re Jones*, 316 Mich App 110, 120; 894 NW2d 54 (2016). The children were wards of the DHHS for over two years. The trial court explicitly referenced that respondent's parenting skills remained a concern for the DHHS, the lawyer guardian ad litem, as well as the children's fathers and relative caregivers. Respondent did not obtain suitable housing, nor did she acquire (or prove to the DHHS that she had attained) a legal source of income. She was not committed to attending the mental health services, substance abuse treatment, drug screenings, or family therapy sessions. The trial court did not approve an adjournment of the hearing to complete the Clinic for Child Study evaluation because respondent called to cancel her appointment on the scheduled day, stating that it was "too early" in the morning. The trial court determined such behavior by respondent was a demonstration that respondent was not prioritizing her children's needs. Contrary to respondent's assertions, respondent's lack of participation in the treatment plan does constitute appropriate confirmation of possible future "direct harm" to the children. "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App at 710. Furthermore, the record indicated that the children's behavior would regress for several days after a visit with respondent, and that the children were exposed to respondent's concerning behaviors. Emotional harm to a child is sufficient to terminate parental rights. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011).

Additionally, respondent harbored or was aware of who was concealing SJW—despite SJW's placement with the DHHS—and compromised SJW's safety, access to a stable living environment, and ability to be enrolled in school. LAW, JLW, and KSW had been residing with their biological, nonrespondent fathers.[1] The trial court expressly considered that CCT and DLT were placed with a relative, but nevertheless found that termination was in the children's best interests because of respondent's lack of commitment to reunification. See *In re Olive/Metts*, 297 Mich App at 43 (noting that "under MCL 712A.19a(6)(a), the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in a child's best interests.") (quotation marks and citations omitted). Additionally, the trial court noted that CCT and DLT were in a home that was willing to adopt them. Therefore, there was a preponderance of evidence that termination of respondent's parental rights was in the children's best interests.

## III. CONCLUSION

The trial court did not plainly err by finding that the DHHS made reasonable efforts toward reunification. The trial court did not clearly err when it determined that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens

---

[1] We note that a parent is not a "relative" under MCL 712A.13a(1)(j). *In re Schadler*, 315 Mich App at 413.